## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| MELINTA THERAPEUTICS, LLC,<br>a Delaware company<br>44 Whippany Road<br>Suite 280<br>Morristown, NJ 07960,<br><br>and<br><br>REMPEX PHARMACEUTICALS, INC.,<br>a Delaware corporation<br>44 Whippany Road<br>Suite 280<br>Morristown, NJ 07960,<br><br>      Plaintiffs,<br><br>  v.<br><br>U.S. FOOD AND DRUG ADMINISTRATION<br>10903 New Hampshire Avenue<br>Silver Spring, MD 20993,<br><br>and<br><br>U.S. DEPARTMENT OF HEALTH<br>AND HUMAN SERVICES,<br>200 Independence Avenue SW<br>Washington, DC 20201,<br><br>and<br><br>XAVIER BECERRA,<br>*In His Official Capacity as Secretary*<br>*of Health and Human Services,*<br>U.S. Department of Health and Human<br>Services<br>200 Independence Avenue SW<br>Washington, DC 20201,<br><br>and | Civil Action No. 1:22-cv-02190 |

ROBERT M. CALIFF, M.D.,                    )
*In His Official Capacity as*              )
*Commissioner of Food and Drugs, United*  )
*States Food and Drug Administration,*     )
U.S. Food and Drug Administration          )
10903 New Hampshire Avenue                 )
Silver Spring, MD 20993,                   )
                                           )
                         Defendants.       )
                                           )
_____   )

## **COMPLAINT**

Plaintiffs Melinta Therapeutics, LLC and Rempex Pharmaceuticals, Inc. (together "Melinta") bring this action for declaratory, injunctive, and other relief against the U.S. Food and Drug Administration ("FDA"); the U.S. Department of Health and Human Services; Xavier Becerra, in his official capacity as Secretary of Health and Human Services; and Robert Califf, M.D, in his official capacity as Commissioner of Food and Drugs, FDA.

The Federal Food, Drug, and Cosmetic Act ("FDCA") governs the pharmaceutical drug approval process for both innovator and generic drugs. In 1984, Congress amended the act through the Hatch-Waxman Amendments, which sought to strike a balance between inducing pioneering research and the development of new drugs and enabling competitors subsequently to bring generic copies of those drugs to market. *See Veloxis Pharms., Inc. v. FDA*, 109 F. Supp. 3d 104, 107 (D.D.C. 2015). A key component of that fundamental balance is a regime that requires generic drug companies to notify innovator drug companies of potential patent infringement by a proposed generic drug in order to allow the innovator to protect its patent rights in court *before* the generic receives FDA approval.

An applicant who files an "abbreviated new drug application," or ANDA, seeking FDA approval of a generic version of an innovator drug must expressly address patents that cover the innovator drug and explain specifically when FDA can approve the application in light of the patents. 21 U.S.C. § 355(j)(2)(A)(vii). One option to address an innovator patent is by including a "paragraph IV certification," which states "that such patent is invalid or will not be infringed by the manufacture, use, or sale of the new drug." 21 U.S.C. § 355(j)(2)(A)(vii)(IV). A successful paragraph IV challenge can clear a patent obstacle to market. In addition, as part of the Hatch-Waxman regime, paragraph IV certification offers a significant incentive: "[T]he first company to file an ANDA containing a paragraph IV certification earns an 'exclusivity' period of 180 days, during which FDA may not approve for sale any competing generic version of the drug at issue." *Teva Pharm. USA, Inc. v. Sebelius*, 595 F.3d 1303, 1305 (D.C. Cir. 2010). But this incentive comes with a risk: filing an application with a paragraph IV certification "constitutes an act of patent infringement." *Id.* (citing 35 U.S.C. § 271(e)(2)(A)).

An ANDA applicant that includes a paragraph IV certification must inform both the patent owner and the company that owns the new drug application ("NDA") for the innovator drug on which the generic drug piggybacks. 21 U.S.C. § 355(j)(2)(B). Receipt of this notice triggers a series of deadlines that are designed to inform the innovator companies and allow them to protect their rights. After the notice is received, the patent owner or innovator drug company has a 45-day window to sue the generic drug company for patent infringement in order to trigger a statutory stay.

21 U.S.C. § 355(j)(5)(B)(iii). If the NDA holder or patent owner sues during that 45-day period following receipt of notice, FDA must wait 30 months after the NDA holder and patent owner's receipt of notice before approving the ANDA, unless the ANDA applicant wins the suit sooner or the court shortens the 30-month period. 21 U.S.C. § 355(j)(5)(B)(iii).

The ANDA applicant must amend its ANDA to provide documentation of the date of receipt of the required notice "by each person provided the notice." 21 C.F.R. § 314.95(e). For decades, FDA has accepted, as adequate documentation of "the date of receipt," "a [registered or certified mail] return receipt or a letter acknowledging receipt by the person provided the notice." 21 C.F.R. § 314.95(a), (e) (1994). Starting in 2016, FDA now also accepts as documentation of "the date of receipt" "signature proof of delivery by a designated delivery service." 21 C.F.R. § 314.95(e). An applicant may not rely on any other form of documentation to prove the date of receipt unless FDA has agreed to such documentation in advance. *Id.*

Here, Nexus Pharmaceuticals, Inc. ("Nexus") submitted an ANDA seeking approval to market a generic version of Melinta's innovator drug. Nexus's ANDA contained a paragraph IV certification stating that Melinta's patents were invalid or would not be infringed by Nexus's generic. But Nexus provided no registered or certified-mail return receipt, signature proof of delivery, or letter acknowledging receipt by Melinta at any point before March 31, 2021. Although Nexus purported to send notice to Melinta in December 2020—in the middle of an unprecedented global

pandemic and before vaccines were widely available—Melinta did not, in fact, receive notice of Nexus's paragraph IV certification until March 31, 2021.

On May 14, 2021, within 45 days of receipt of the notice, Melinta sued Nexus for patent infringement in the Northern District of Illinois. FDA is thus statutorily barred from making its approval of Nexus's application effective until October 1, 2023. Yet despite the ongoing litigation, FDA denied Melinta's citizen petition asking FDA to refrain from issuing any approval during the 30-month stay in a way that would violate its statutory commands. Shortly thereafter, in the afternoon on July 25, 2022, FDA disclosed publicly that it had approved Nexus's application on July 22, 2022. FDA's denial of Melinta's citizen petition and approval of Nexus's ANDA are inconsistent with the statutory scheme, violate its own regulations, and create a path for ANDA applicants to skirt important patent protections. Melinta respectfully requests that the Court set aside FDA's denial of Melinta's citizen petition and order FDA to withdraw its approval of Nexus's application or suspend the approval until the statutory stay expires. In support of its causes of action, Melinta avers as follows:

## NATURE OF THE ACTION

1.    This is an action to hold unlawful and set aside as arbitrary, capricious, an abuse of discretion, and contrary to law FDA's final decision approving Abbreviated New Drug Application ("ANDA") No. 214934 submitted by Nexus Pharmaceuticals, Inc. ("Nexus") seeking to market a purported generic form of Melinta's innovator drug Minocin® (minocycline) for Injection. The agency's decision—which would allow ANDA applicants to circumvent the notice requirements

and patent protections set forth in the Hatch-Waxman Act—is inconsistent with the underlying statutory scheme and regulatory restrictions.

2.      Melinta seeks a declaratory judgment declaring FDA's action approving Nexus's ANDA to be arbitrary, capricious, an abuse of discretion, and contrary to law.

3.      Melinta also seeks a preliminary and permanent injunction ordering FDA to withdraw or suspend its approval of Nexus's ANDA.  In addition, Melinta seeks a preliminary and permanent injunction to require FDA to take whatever action may be necessary to prevent the marketing and distribution of Nexus's drug until at least after expiration of the 30-month statutory stay.

4.      Absent injunctive relief, FDA's decision to approve Nexus's ANDA will cause serious and irreparable economic and reputational injury to Melinta.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1361 (mandamus).

6.      The relief requested is authorized pursuant to 28 U.S.C. § 1651 (All Writs Act) and 28 U.S.C. § 2201 (Declaratory Judgment Act).

7.      Melinta has a right to bring this action pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701–706.

8.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(e) and 5 U.S.C. § 703 because this is a civil action in which one of the defendants is an officer or agency of the United States that resides in this judicial District.

9.     There is currently an actual, justiciable controversy between the parties concerning whether FDA's approval of Nexus's ANDA is consistent with the requirements of the FDCA, 21 U.S.C. § 301 *et seq.*, FDA's regulations, and the APA.

10.    Declaratory relief will resolve this controversy and determine whether FDA's approval of Nexus's ANDA was lawful, including being consistent with the FDCA, FDA's regulations, and the APA.

11.    A preliminary injunction against the defendants requiring FDA to withdraw or suspend its approval of Nexus's ANDA will shield Melinta from ongoing and irreparable harm while this litigation is pending.

12.    A permanent injunction against the defendants requiring FDA to withdraw or suspend its approval of Nexus's ANDA will protect Melinta's rights prospectively after the final resolution of this matter.

## PARTIES

13.    Plaintiff Melinta Therapeutics, LLC is a limited liability company organized and existing under the laws of Delaware, having its principal place of business at 44 Whippany Road, Suite 280, Morristown, NJ 07960.   Melinta Therapeutics, LLC was formed in November 2020 from a conversion of Melinta Therapeutics, Inc., a Delaware corporation.

14.    Plaintiff Rempex Pharmaceuticals, Inc. is a corporation organized and existing under the laws of Delaware and has its principal place of business at 44 Whippany Road, Suite 280, Morristown, NJ 07960.  Rempex Pharmaceuticals, Inc. is a wholly owned subsidiary of Melinta Therapeutics, LLC.

15.   Defendant FDA, which has its principal office at 10903 New Hampshire Avenue, Silver Spring, Maryland 20993, is a federal agency headquartered in Maryland.  It regulates prescription drugs under authority delegated by Congress and the Secretary of Health and Human Services.

16.   Defendant U.S. Department of Health and Human Services, which has its principal office at 200 Independence Avenue, S.W., Washington, D.C. 20201, is a federal agency headquartered in the District of Columbia.  It has authority over FDA.

17.   Defendant Xavier Becerra is being sued in his official capacity as Secretary of Health and Human Services.  As Secretary, Mr. Becerra has ultimate responsibility for the activities of the Department of Health and Human Services, including those actions complained of herein.  Mr. Becerra maintains an office at 200 Independence Avenue, S.W., Washington, D.C. 20201.

18.   Defendant Robert Califf, M.D., is being sued in his official capacity as Commissioner of Food and Drugs, FDA.  As Commissioner, Dr. Califf has responsibility for the activities of FDA, including those actions complained of herein. Dr. Califf maintains an office at 10903 New Hampshire Avenue, Silver Spring, Maryland 20993.

## STATUTORY AND REGULATORY BACKGROUND

19.   The FDCA requires that drug manufacturers (or "sponsors") demonstrate the safety and effectiveness of their products for their intended use.  *See* 21 U.S.C. § 355.  Innovator drug manufacturers like Melinta demonstrate safety and effectiveness by conducting comprehensive pre-clinical and clinical studies of their

products, producing extensive data that are submitted in New Drug Applications ("NDAs").  21 U.S.C. § 355(b)(1).

20.    An NDA must include, among other things, technical data on the composition of the drug, the means for manufacturing it, and data from clinical trials establishing the safety and efficacy of the drug for its intended uses.  *Id.*

21.    In 1984, Congress passed the Hatch-Waxman Amendments, Pub. L. No. 98-417, 98 Stat. 1585, which amended the FDCA and established an abbreviated process by which drug companies could gain approval from FDA to bring generic versions of innovator drugs to market.  21 U.S.C. § 355(j).  The Hatch-Waxman Amendments provide a mechanism—through the filing of an ANDA, an abbreviated new drug application—by which a generic drug company can rely on the costly pre-clinical and clinical data previously generated by an innovator drug manufacturer, rather than having to conduct itself all the studies normally required for approval of an NDA.

22.    A generic drug company that relies on this data, however, must include in its application a patent certification addressing Orange Book-listed patents that cover the underlying innovator drug.  *See* 21 U.S.C. § 355(j)(2)(vii).

23.    One type of certification is paragraph IV certification, in which the ANDA applicant certifies that the innovator drug's "patent is invalid or will not be infringed by the manufacture, use, or sale of the new drug for which the application is submitted."  21 U.S.C. § 355(j)(2)(A)(vii)(IV).

24.    Filing an ANDA with a paragraph IV certification constitutes an act of patent infringement, allowing the patent owner to bring suit under the patent laws and thereby obtain a judicial determination of whether the proposed generic drug would infringe the patent.  35 U.S.C. § 271(e)(2)(A).

25.    An applicant that makes a paragraph IV certification in its ANDA is statutorily obligated to give notice of the ANDA and the paragraph IV certification to both the innovator drug NDA holder and the patent owner, and the notice must include a "detailed statement of the factual and legal basis" for the applicant's contention that the patent is invalid or will not be infringed.   21 U.S.C. § 355(j)(2)(B)(iii)–(iv).

26.    The applicant must provide this statutorily required notice within a certain time limit.  If the paragraph IV certification is made in the application, the applicant must give notice no later than 20 days after the date of the postmark on the notice with which the Secretary informs the applicant that the ANDA has been filed. 21 U.S.C. § 355(j)(2)(B)(ii)(I).

27.    This notice provides patent holders and innovator drug companies the opportunity to protect their rights to any disputed patent in court.  And to ensure that the opportunity is a meaningful one, the Hatch-Waxman Amendments provide that if, after receiving notice, the patent owner or innovator drug company brings an action for infringement of the patent within 45 days after the date on which the patent owner and innovator receive notice of the ANDA, then FDA's approval of the ANDA may be made effective only after 30 months from "the date of the receipt of the

notice," unless the court holds otherwise or resolves the patent infringement action. *See* 21 U.S.C. § 355(j)(5)(B)(iii).

28.    After providing this statutorily required notice, the ANDA applicant must amend its application to include "a statement certifying that the notice has been provided to each person" entitled to receive it and "to provide documentation of the date of receipt of the notice … by each person provided the notice."  21 C.F.R. § 314.95(b)(3), (e).  FDA regulations govern how the ANDA applicant must send the notice and specify what documentation FDA will accept to prove both "sending" and "receipt" of the notice.  21 C.F.R. § 314.95(a), (e).

29.    An ANDA applicant "must send notice of such [paragraph IV] certification by registered or certified mail, return receipt requested, or by a designated delivery service."  21 C.F.R. § 314.95(a).

30.    FDA will accept, as adequate documentation of "the date the notice was *sent*," "a copy of the registered mail receipt, certified mail receipt, or receipt from a designated delivery service."  21 C.F.R. § 314.95(e) (emphasis added).

31.    Adequate documentation of "the date of *receipt*" requires "a return receipt, signature proof of delivery by a designated delivery service, or a letter acknowledging receipt by the person provided the notice."  21 C.F.R. § 314.95(e) (emphasis added).  An applicant may not rely on any other form of documentation to prove the date of receipt unless FDA has agreed to such documentation in advance. *Id.*

32.     FDA is not free to ignore either the statutory requirements or its own regulations in the name of expediency or administrative convenience.

## GENERAL ALLEGATIONS

### *Nexus Submits an ANDA to FDA with a Paragraph IV Certification and Purportedly Tries to Notify Melinta*

33.     Nexus prepared and submitted ANDA No. 214934 to FDA with a paragraph IV certification seeking approval to manufacture, use, or sell a generic version of Melinta's product Minocin® for Injection before the expiration of Melinta's patents.

34.     Pursuant to the statutory framework, Nexus purported to notify Melinta of the paragraph IV certification through a Notice Letter dated December 7, 2020.

35.     Nexus sent this letter via Federal Express ("FedEx") "Priority Overnight" service, attempting to serve Melinta the Notice Letter on December 8, 2020.  FedEx offered several "Delivery Signature Options" that Nexus could have selected to require the delivery driver to obtain a recipient signature as proof of delivery.  Nexus, however, did <u>not</u> specify that a signature was required when sending the package via FedEx.  *See* Melinta Citizen Petition at 4–5 (Oct. 16, 2021), attached as Exhibit A.

36.     Due to COVID-19, FedEx had modified its signature policy prior to and including December 8, 2020.  According to FedEx policy, if Nexus had requested a recipient signature, the driver would have collected the recipient's first initial and last name and would have attempted to collect a signature by the recipient.  If the recipient had refused to sign for the signature-requested delivery or had not had access to an acceptable stylus or writing instrument for the driver's device, the driver

would enter "C-19" in the place of a signature image.  Because Nexus did not request signature proof of delivery, however, the FedEx driver was not required to—and in fact did not—collect any recipient's first initial and last name, attempt to obtain the recipient's signature, or find any Melinta representative to whom to give the Notice Letter.  *See* Citizen Petition at 5–6.

37.    The tracking information from FedEx states only that the package was "signed for" on December 8, 2020 by "A.MELNTA."  No employee at Melinta had that name at the time, indicating that the FedEx employee merely wrote a version of Melinta's name instead of finding an actual person to whom to give the delivery.  *See* Citizen Petition at 5.

38.    Nexus thus did not obtain, and did not provide to FDA through an amendment to its ANDA, the "signature proof of delivery" required by FDA's regulation (or any other acceptable documentation of receipt by Melinta on or around December 8, 2020).

### *Melinta Receives Notice on March 31, 2021*

39.    In fact, Melinta did not receive notice, and FedEx had no contact with any Melinta agent, employee or officer, on December 8, 2020.

40.    Like many other businesses in the United States and around the world, Melinta's corporate offices were effectively closed to the public in December 2020 due to the COVID-19 pandemic, and employees had been directed to work from home.  At the time Nexus tried to send notice, Melinta's offices had been locked and were accessible only by access card.  To accommodate the shut-down, Melinta arranged to

receive mail and other deliveries through a formal procedure that ensured designated employees would timely open, review, and appropriately route electronic and hard copies of inbound correspondence.  Melinta's internal process for handling mail and other deliveries correctly took in and routed hundreds of letters and packages during the pandemic shut-down, including a significant number of legal notices.

41.    The Notice Letter did not go through this established process and was not sorted or organized with the remainder of received business and legal correspondence.

42.    The Notice Letter was first received by Melinta on March 31, 2021, when Melinta's General Counsel discovered the letter.

### Melinta Sues Nexus for Patent Infringement within Forty-Five Days of Receipt of Notice

43.    Melinta filed an action for patent infringement against Nexus on May 14, 2021, within 45 days of receipt of the letter, thereby triggering the 30-month period during which FDA is statutorily barred from approving Nexus's ANDA.  That period runs from March 31, 2021 until October 1, 2023.

44.    The patent infringement litigation is currently pending in the United States District Court for the Northern District of Illinois.  *See Melinta Therapeutics, LLC v. Nexus Pharmaceuticals, Inc.*, No. 1:21-cv-02636.

### Melinta Explains the Situation to FDA in a Citizen Petition

45.    At the time it approved Nexus's ANDA, FDA knew that Nexus had not amended the ANDA to provide an acceptable form of documentation of Melinta's

receipt of the Notice Letter.  FDA also knew that Melinta had not in fact received the Notice Letter until March 31, 2021.

46.    In addition to Nexus's failure to amend its ANDA to provide the requisite documentation, Melinta submitted a citizen petition to FDA regarding the date of receipt.

47.    Melinta advised FDA on May 7, 2021 of Nexus's deficient paragraph IV certification.  And on August 11, 2021, Melinta notified FDA of Melinta's initiation of patent litigation within 45 days against Nexus.  On October 16, 2021, Melinta filed a citizen petition with FDA, further alerting FDA to the date Melinta received the notice and asking FDA to, inter alia, determine that the statutory 30-month stay under 21 U.S.C. § 355(j)(5)(B)(iii) had been triggered by the filing of the patent infringement action.  *See generally* Citizen Petition.

48.    In the Petition, Melinta pointed out that Nexus sent the notice without requiring a signature.  Citizen Petition at 5.  Melinta also explained that while FedEx had modified its signature processes due to COVID-19, if Nexus had required a signature, FedEx would have attempted to collect one and would not have delivered the package without at least collecting the first initial and last name of an actual human recipient who accepted delivery of the package.  *See* Citizen Petition at 5–6.

49.    Although the FedEx courier inputted the typed phrase "A.MELNTA" in the tracking information, Melinta highlighted to FDA that no employee worked at that time with that name or initials.  Citizen Petition at 5.  Melinta also explained that it had interviewed each of its employees who were in the office on December 8,

2020, as well as additional administrative staff assigned to receive and process incoming correspondence, and confirmed that the FedEx courier had not made contact with any of those employees. *Id.* Melinta noted that the recorded name "A.MELNTA" was a misspelling of Melinta's corporate name and was likely entered by the courier because no actual person's name was available. *Id.*

50.    FDA never sought additional information from Melinta on this topic.

### FDA Denies Melinta's Citizen Petition and Approves ANDA No. 214934

51.    On July 22, 2022, FDA notified Melinta that it had denied Melinta's citizen petition. *See* FDA Denial, attached as Exhibit B.

52.    FDA acknowledged that an ANDA applicant must amend its ANDA to provide documentation of the date of receipt of the notice, that this documentation requires signature proof of delivery by a designated delivery service, and that the date of receipt triggers the 45-day period to file a patent infringement suit to start the statutory 30-month stay. *See* FDA Denial at 5.

53.    FDA determined, however, that FedEx's proof-of-delivery information constituted "signature proof of delivery," despite the fact that it contained no signature by the intended recipient and that no person at Melinta signed for or received the notice when delivered. *See* FDA Denial at 7; *see also* Citizen Petition at Attachment 7.

54.    FDA failed to identify any evidence that Melinta actually received the notice prior to March 31, 2021. FDA also failed to identify any evidence that contradicts Melinta's statements that the Notice Letter was not received by Melinta

and that FedEx did not attempt to contact anyone at Melinta regarding the Notice letter.  *See* Citizen Petition at 5.

55.    FDA also determined that, despite the fact that no one at Melinta received notice on December 8, 2020, this would count as the date on which the notice was "received" for purposes of the 45-day period in which to file a patent infringement action and trigger the statutory 30-month stay.  FDA Denial at 8.

56.    FDA concluded that the 30-month statutory "stay does not apply."  FDA Denial at 8.

57.    FDA also denied Melinta's request for advance notice of any approval of ANDA 214934. FDA Denial at 8.

58.    On July 25, 2022, at approximately 2:00 p.m., FDA disclosed publicly that it had approved Nexus's ANDA No. 214934.

## CLAIM FOR RELIEF
### (Declaratory and Injunctive Relief)

### Violation of the Administrative Procedure Act
### and Statutory and Regulatory Notice and Stay Obligations
### for Approving an ANDA Application
### (5 U.S.C. § 706(2)(A); 21 U.S.C. § 355(j)(5)(B); 21 C.F.R. § 314.95(e))

59.    Melinta realleges and incorporates by reference the allegations set forth in paragraphs 1 through 58 of this Complaint as if fully set forth herein.

60.    Where a patent holder brings an action for patent infringement within 45 days of receipt of notice of the paragraph IV certification and ANDA, FDA's approval may be made effective only after a 30-month period from the date of receipt,

unless the court holds otherwise or resolves the patent infringement action.  *See* 21 U.S.C. § 355(j)(5)(B)(iii).

61.   FDA regulations govern what documentation is required to prove the date of receipt of the notice.

62.   Adequate documentation of the date of receipt requires a registered or certified-mail return receipt, signature proof of delivery by a designated delivery service, or a letter acknowledging receipt by the person provided the notice.  21 C.F.R. § 314.95(a), (e).

63.   An application may not rely on any other form of documentation to prove the date of receipt unless FDA has agreed to such documentation in advance.  *Id.*

64.   Nexus did not provide FDA with a return receipt, signature proof of delivery from a designated delivery service, or a letter acknowledging receipt by Melinta that would prove receipt of the Notice Letter earlier than March 31, 2021.

65.   Melinta, in fact, did not receive the Notice Letter until March 31, 2021.

66.   Melinta filed a patent infringement suit against Nexus within 45 days of this date of receipt, triggering the statutory 30-month stay of FDA approval.

67.   Despite Melinta's satisfying the statutory and regulatory requirements for the 30-month stay, FDA denied Melinta's citizen petition and denied Melinta that stay.  *See* FDA Denial at 8.  FDA's denial injures Melinta by improperly denying it the statutory rights and protections of the Hatch-Waxman regime.

68.   FDA's denial of Melinta's citizen petition was therefore arbitrary, capricious, and contrary to law within the meaning of 5 U.S.C. § 706(2)(A), in excess

of statutory authority within the meaning of 5 U.S.C. § 706(2)(C), and in violation of the FDCA and FDA's regulations.

69.     Despite the statutory 30-month stay, FDA publicly disclosed on July 25, 2022 that it had approved Nexus's ANDA on July 22, 2022.

70.     FDA's approval of Nexus's ANDA was therefore arbitrary, capricious, and contrary to law within the meaning of 5 U.S.C. § 706(2)(A), in excess of statutory authority within the meaning of 5 U.S.C. § 706(2)(C), and in violation of the FDCA and FDA's regulations.

## PRAYER FOR RELIEF

WHEREFORE, Melinta requests that the Court:

A.      Enter a declaratory judgment declaring that FDA's denial of Melinta's citizen petition was arbitrary, capricious, an abuse of discretion, and contrary to law.

B.      Enter a preliminary and permanent injunction that directs FDA to grant the citizen petition's request for relief by determining that the 30-month statutory stay has been triggered.

C.      Enter a declaratory judgment declaring that FDA's approval of Nexus's ANDA was arbitrary, capricious, an abuse of discretion, and contrary to law.

D.      Enter a preliminary and permanent injunction that (1) directs FDA to withdraw or suspend its approval of Nexus's ANDA; and (2) directs FDA to take whatever actions may be necessary to prevent the marketing and distribution of Nexus's purported generic drug product until the 30-month period has ended or until

the court has resolved the patent infringement litigation or set forth a different time period.

      E.     Vacate any additional agency action found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, and remand any matters herein to FDA for further proceedings in accord with any legal instructions the Court may deem proper and just.

      F.     Order such other and further relief as the Court deems just and proper.

Respectfully submitted,

Dated: July 25, 2022

/s/Jeffrey S. Bucholtz
Jeffrey S. Bucholtz
  D.C. Bar No. 452385
Paul Alessio Mezzina
  D.C. Bar No. 999325
Amy R. Upshaw
  D.C. Bar No. 888156455
KING & SPALDING LLP
1700 Pennsylvania Avenue NW
Suite 900
Washington, DC 20006
Telephone: (202) 737-0500
Facsimile: (202) 626-3737
jbucholtz@kslaw.com
pmezzina@kslaw.com
aupshaw@kslaw.com

*Counsel for Plaintiffs Melinta Therapeutics, LLC and Rempex Pharmaceuticals, Inc.*